1

The Honorable Richard A. Jones

2

3

4

5

6

7
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
8
**AT SEATTLE**

9
MARGARET COOK, QUI TAM PLAINTIFF
for and on behalf of the United States of
10
America,

**CASE NO. C13-01312-RAJ**

**PLAINTIFF'S RESPONSE TO**
11
Plaintiff,
**DEFENDANTS' MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT**
12
vs.

13
PROVIDENCE HEALTH & SERVICES, a
NOTED FOR ORAL ARGUMENT:
Washington corporation; PROVIDENCE
April 25, 2014
14
HEALTH & SERVICES - WESTERN
WASHINGTON, a Washington corporation;
15
PROVIDENCE HEALTH & SERVICES -
WASHINGTON; a Washington corporation;
16
PROVIDENCE HEALTH & SERVICES -
OREGON, an Oregon corporation;
17
PROVIDENCE HEALTH & SERVICES -
MONTANA, a Montana corporation;
18
PROVIDENCE PHYSICIAN SERVICES CO.,
a Washington corporation; and HEALTH
19
SERVICES ASSET MANAGEMENT, LLC, a
Washington corporation.
20
Defendants.

21

22
## I.  INTRODUCTION

23
Margaret Cook (henceforth "Cook"), the relator herein, has alleged in her Second Amended

24
Complaint that the defendants have violated The False Claims Act (FCA), 31 U.S.C. § 3729,

25
specifically §'s 3729(a)(1)(A), 3729(a)(1)(B), 3729(a)(1)(C) and 3729(a)(1)(G).

26
Payment by the government of the Providence defendants Medicare and Medicaid billings

27

PLAINTIFF'S RESPONSE TO DEF'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(Case No. C13-01312-RAJ) - 1 of 24

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

is specifically conditioned in their Medicare and Medicaid Enrollment Applications upon each Providence defendant certifying adherence to the applicable statutes, regulations and program rules governing Medicare and Medicaid reimbursement.

The statutes , regulations and program requirements themselves also specifically specify that adherence to those statutes and regulations, independent of the Provider Enrollment Agreements as conditions of payment.

Cook's essential allegation is that the Providence defendants are violating the conditions for payment set by the Government and the various states in connection with many of the bills for which the defendants have sought and received payment by the Government from the Medicare and Medicaid systems.  Providence is alleged to, in connection with the presentment of thousands of claims to the Government, have also charged the beneficiaries to which these claims pertain, in ways that are strictly forbidden by the Medicare and Medicaid laws, regulations and program requirements, thus violating the conditions of payment they are contractually and statutorily bound to follow.

By failing to meet these statutory and regulatory conditions for payment for these thousands of Medicare and Medicaid eligible beneficiary accounts, the Providence defendants have defrauded the Government by both presenting factually false claims and by falsely certifying compliance with the statutes, regulations, and program requirements which are the conditions of payment upon which the Government's payment decision is decided.  Because the statutes, regulations, and program requirements themselves also specify adherence to the same as conditions of payment the defendants have violated the FCA, independent of the certifications of compliance in the Provider Enrollment Applications.  The defendants are also alleged to have violated the False Claims Act by presenting claims for payment to the Government that are based upon a falsely created record, i.e., the certifications contained within the Medicare Provider Enrollment Application or the Medicaid Enrollment Applications.

Alaska, Washington, Oregon, Idaho and Montana also require, as a condition of payment in

PLAINTIFF'S RESPONSE TO DEF'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(Case No. C13-01312-RAJ) - 2 of 24

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

their respective Medicaid Provider Agreements (appended to the SAC as Ex's C through G), compliance with the Federal and State Medicaid laws, regulations and program requirements. When a Medicare or Medicaid provider violates the Government's or a state's conditions for payment of such claims, any presentation to and subsequent payment by the Government of such a claim violates the FCA. The submission of a claim upon which statutory, regulatory, or program requirements are conditions of payment (even without a false certification) and have been violated renders that claim false under 31 U.S.C. § 3729(a)(1)(A).

A Medicare and Medicaid provider violates 31 U.S.C. § 3729(a)(1)(B) when it knowingly makes, uses or causes to be made or used a false record or statement material to a false or fraudulent claim. The SAC alleges the offending false record in this case is the false certification of compliance with the laws, regulations and rules upon which payment by the Government is conditioned.

Additionally, Cook alleges that Providence is illegally retaining funds paid by the Medicare and Medicaid systems that should be refunded as a result of the fraudulent conduct described in the SAC. The SAC describes numerous instances of double payments made by third parties, as well as the beneficiaries. These payments made on the same accounts by the beneficiaries or third parties are then not accounted for properly in beneficiary accounts. The failure to refund to Medicare or Medicaid or the beneficiaries or third parties as the case may be renders any payments by Medicare or Medicaid on these same accounts for the same service, false claims under 31 U.S.C. § 3729(a)(1)(A), 31 U.S.C. 3729(a)(1)(B), 31 U.S.C. § 3729(a)(1)(D) and 31 U.S.C. § 3729(a)(1)(G).

Neither Medicare or Medicaid can be billed when illegal payments are sought and retained from beneficiaries or third party payers by a Medicare or Medicaid enrolled provider. The retention of the payments made by the Medicare and Medicaid on the same accounts in which illegal, excessive payments have been taken in from beneficiaries and retained illegally is another way the Providence defendants are alleged in the SAC to be violating the FCA.

The scale of the fraud alleged by relator is massive, resulting in thousands of fraudulent Medicare and Medicaid billings having been paid by the Government during the time period alleged in Cook's SAC.

PLAINTIFF'S RESPONSE TO DEF'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(Case No. C13-01312-RAJ) - 3 of 24

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

1   Millions of dollars of funds received from Medicare, Medicaid, beneficiaries, and third parties unallocated

2   to any patient account accrue on a monthly basis by the Providence defendants.  These funds are not

3   reconciled and the accounts to which they pertain are not adjusted by Providence. This results in a massive

4   fraud on the Government, as well as on beneficiaries, other patients and third party payers.

## II.  SUMMARY OF ARGUMENT

6   Contrary to the defendants position, as set forth in their brief, Cook has cited numerous

7   statutes and regulations that have been violated by the Providence defendants in the SAC.  Cook has

8   cited those, as well as additional laws, regulations or program requirements in this responsive brief.

9   The defendants' argument is premised upon cases interpreting prior versions of the FCA and

10  does not address  the liberalizing effect of the 2009 and 2010 amendments to the FCA.

11  Cook's argument is premised upon the plain reading of the current version of the FCA as

12  amended by the Fraud Enforcement and Recovery Act (henceforth "FERA") in 2009 and as amended

13  by the Affordable Care Act (henceforth "ACA") in 2010.

14  The amended FCA clearly contemplates a viable action based upon the facts alleged in the

15  SAC. Defendants' arguments are contradicted by the most applicable case law, particularly *Hendow*

16  *v. Univ. of Phoenix,* 461 F.3d 1166 (9th Cir. 2006) and *New York v. Amgen, Inc.*, 652 F.3d 103

17  (2011).  See also *U.S. ex rel. Hutcheson v. Blackstone Medical Inc.,* 647 F.3d 677 (1st Cir. 2011).

18  These cases, based upon a prior, more restrictive version of the FCA, each allowed FCA claims to

19  survive a FRCP 12(b)(6) motion on analogous similar facts as alleged in Cook's SAC.

20  Medicare enrolled Institutional Providers have to certify upon enrollment, pursuant to their

21  Medicare Enrollment Application (CMS 855-A)[1], their certification of agreement to the following:

22  I agree to abide by the Medicare laws, regulations and program instructions that apply
    to this provider. . . .  I understand that payment of a claim by Medicare is conditioned

23  upon the claim and the underlying transaction complying with such laws, regulations,
    and program instructions (including, but not limited to, the Federal anti-kickback

24  stature and the Stark law), and on the provider's compliance with all applicable
    conditions of participation in Medicare.  I will not knowingly present or cause to be

25  presented a false or fraudulent claim for payment by Medicare, and I will not submit
    claims with deliberate ignorance or reckless disregard of their truth or falsity.

26

27  [1] CMS-855-A was adopted in 2011.

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

1  (emphasis added)

2  SAC Ex. A, Page 48.

3  The certification makes no distinction between "conditions of payment" and "conditions of

4  participation", yet references both.

5  In the same Section 14 of Ex. A (at page 45) to the SAC is language specifically delineating

6  the Civil False Claims Act, 31 U.S.C. § 3729, as a possible remedy to the Government if the

7  Certification above referenced is false.

8  The Providence defendants' claim that Cook's allegations in the SAC are insignificant

9  "billing errors" that can only be dealt with by the Government administratively is undercut by the

10  certification language in the various required Provider Agreements (attached to the SAC), as well

11  as the specific reference in said Provider Agreements to the Civil FCA as a Governmental remedy

12  in addition to other described, administrative, criminal and civil remedies available to the

13  Government.

14   It should also be pointed out that the "deliberate  indifference" and "reckless disregard"

15  language set forth in the Enrollment Applications is consistent with  the newly amended (2009)

16  definition of "knowing" or "knowingly" in the FCA, as set forth in 31 U.S.C. § 3729(b)(1)(A).[2]

17  Clearly the intent of Congress, in amending the FCA, was to clearly bring within its aegis fact

18  patterns such as alleged in the SAC.  Neither the Government or a relator is foreclosed from pursuing

19  a FCA claim due to the existence of other available administrative remedies.  Clearly, the Provider

20  Enrollment Application contemplates the use of the FCA in cases such as alleged in the SAC.  The

21  defendants  have so agreed in writing to such a remedy.

22  Similar certification language conditioning payment of Medicare claims upon compliance

23  with applicable laws, regulations and program instructions is set forth at page 25 of Ex. B to the

24  SAC, the Medicare Enrollment Application -- Physician and Non-Physician Practitioners (CMS-

25  855I).[3]  Likewise, similar language is set forth in the various state Medicaid Provider Agreements,

26

27
---
[2] See:  Ex. A to SAC, Para. 2, page 48.
[3] See: Dkt. 16-2 (Ex. B to SAC), page 27.

PLAINTIFF'S RESPONSE TO DEF'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(Case No. C13-01312-RAJ) - 5 of 24

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

1    as cited and set forth in the SAC.[4]

2         The scienter element is met by the allegations made in the SAC of knowledge (knowingly

3    as defined per 31 U.S.C. § 3729(b)(1)(A)) by Providence and HSAM of the illegal payments

4    collected from beneficiaries and the other illegal acts alleged in the SAC which renders any

5    Government payments made on those accounts, false per the FCA.

6         The Ninth Circuit Court of Appeals has explicitly recognized Relator's implied and express

7    certification theories in other analogous cases, such as *Hendow v. Univ. of Phoenix*, 461 F.3d 1166

8    (9th Cir. 2006). *Hendow, supra.,* is on point to the present case and allowed an FCA case to go

9    forward upon weaker facts than alleged in the SAC. Moreover, since *Hendow, supra.,* was decided,

10   Congress has significantly expanded the scope and availability of the FCA as a Government remedy

11   through a series of recent (post 2009) amendments to the FCA designed to overrule prior cases

12   deemed by Congress to be unduly restrictive of the FCA and to expand, clarify and define the level

13   and types of scienter required to violate the FCA. These amendments have loosened the

14   requirements to establish scienter and materiality. They have removed the requirements of Rule 9(b)

15   because the FCA can be violated without a fraudulent act if the act is "false" and committed with

16   "reckless disregard" or if a person acts with "deliberate ignorance." A FCA violation now requires

17   no specific intent to defraud. The amendments firmly establish the viability of Cook's SAC and were

18   adopted as a Congressional refutation of arguments, similar to the ones made herein by the

19   defendants.

20              III.  **FACTUAL BACKGROUND**

21        Cook worked for defendant, Health Services Asset Management (henceforth "HSAM"), from

22   2011 to August 2013. HSAM is the in house collection agency for the Providence defendants. Cook

23   had spent decades in the collecting business. While at HSAM, Cook worked as a collector of

24   purportedly delinquent patient accounts. Soon after the commencement of her employment, Cook

25   discovered a constant and apparently deliberate flouting of the various Medicare and Medicaid

26
27   [4] See: Dkt. 16-3 (Ex. C to SAC), page 4; (Ex. D to SAC), page 7; (Ex. E to SAC), pages 11-13; (Ex. F to SAC), pages
     16-18; and pages 21-23.

Condition of Payment laws, regulations and program requirements by Providence and their collection agency, HSAM.  She consistently reported these violations to management at HSAM.  HSAM is a Providence controlled collection agency which collects accounts only for Providence.  Cook was paid by Providence while working at HSAM. She alleges in her SAC five common ways in which actions taken by Providence with "deliberate ignorance" or "reckless indifference" subsequently led to false claims.[5]  They are:

1.      Failure at the initial point of patient contact or thereafter to identify all possible patient coverages whether those coverages are Medicare, Medicaid, private insurance, or other such coverages provided by the United States such as the benefits for military service benefits through the Federal Veteran's Administration or coverages available from the Washington State Department of Labor and Industries or other state worker's compensation program;

2.      Failure of the healthcare provider (typically a physician) at the point of service to properly describe and memorialize the service provided so that the proper billing codes can be determined;

3.      Failure to properly code the service delivered to the patient on the bills submitted to Medicare or Medicaid;

4.      Failure to identify possible third party coverages for Medicare and Medicaid beneficiaries; and

5.      Failure to properly credit payments made by third party payors on Medicare or Medicaid eligible accounts as well as a failure to refund to Medicare and Medicaid associated overpayments on those accounts also paid by beneficiaries and/or third parties.

These failures, individually and collectively, regularly result in "double payments" ( and excess payments) by the Government, beneficiaries, and/or third parties.  When Medicare and Medicaid patients are routinely being charged impermissible amounts in violation of the Conditions of Payment laws, regulations and program requirements the Government is not getting the benefit

---

SAC, para. XII.

PLAINTIFF'S RESPONSE TO DEF'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(Case No. C13-01312-RAJ) - 7 of 24

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

of their bargain.  Beneficiaries are being charged at a private pay rate for medical care that would, but for Providence's knowing violation of the Medicare statutes, regulations and program requirements, have been eligible for Medicare or Medicaid reimbursement.

Likewise, when patient accounts are not properly credited with payments made by Medicare and Medicaid and those accounts are then subsequently referred to collection by HSAM at private pay rates, the retention by the Providence defendants of the uncredited Medicare and Medicaid payments renders the claims made for those payments false pursuant to the "reverse false claims" provisions of section 3729(a)(1)(G).  Recent amendments by the ACA require any Medicare or Medicaid overpayment to be returned within specified time frames as in as little as 60 days.  John T. Boese, Civil False Claims And Qui Tam Actions, Fourth Edition, Appendix A. 5B.

The failure to credit third party payments on accounts for which payments are also sought from Medicare and Medicaid also results in a "double payment " of the account by the third party payers and/or beneficiaries and Medicare and Medicaid and renders any claim for payment from the Medicare and Medicaid systems made on such accounts a false claim. The retention of the funds paid by Medicare and Medicaid when third parities, or beneficiaries, have also been charged improperly violates 31 U.S.C. § 3729(a)(1)(G).

## IV.  LEGAL ARGUMENT

### A.    COOK'S CAUSE OF ACTION IS RECOGNIZED BY THE FCA.

Cook's SAC allegation pursuant to section 3729(a)(1)(B) is premised upon what is recognized by the Ninth Circuit as "implied" or "express" false certification and/or "promissory estoppel."  All three theories can be applied to the facts set forth in Cook's SAC.  These theories require establishment of the same four elements. Cook has alleged each of these elements in her SAC.  They are:

- ●    (1) a false statement or fraudulent course of conduct;

- ●    (2) made with scienter;

- ●    (3) that was material, causing;

PLAINTIFF'S RESPONSE TO DEF'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(Case No. C13-01312-RAJ) - 8 of 24

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

1     •    (4) the Government to pay out money or forfeit moneys due.

2 *Hendow v. Univ. of Phoenix*, F. 3d 1161 (9th Cir. 2006).

3     The facts alleged in *Hendow, Id.*, are quite similar to the facts alleged in the SAC.  In

4 *Hendow, Id.*, the Ninth Circuit specifically recognized "false certification" or "promissory estoppel"

5 as a proper basis for a FCA action.  In *Hendow, Id.*, the relators' complaint alleged that the

6 University of Phoenix, a private provider of educational services, was paying recruiters on a

7 incentive compensation, per student, basis contrary to the ban on such compensation per 20 U.S.C.

8 § 1094(a)(20).  *Hendow, Id.*, was a "false certification" case because the University of Phoenix had

9 made false representations in yearly certifications to comply with the incentive compensation ban

10 in order to qualify to receive Title IV funds from the Government.  The relators had alleged that

11 these false representations, coupled with later claims for payment of Title IV funds, constituted false

12 claims under the prior version of the FCA,  31 U.S.C. § 3729(a)(1) & (a)(2).

13     A claim is false pursuant to 31 U.S.C. § 3729(a)(1)(A), after the 2009 FERA amendments,

14 if a violation of prerequisites to payment causes the claim to be false.  *Boese, supra.,* § 1.09 (B).

15     Cook has alleged, analogous to the claims made by the relators in *Hendow, supra.*, that the

16 Providence defendants have entered into various Enrollment Applications with the Medicare and

17 Medicaid systems and have, in those applications, knowingly made false promises to comply with

18 the laws, regulations and program requirements of the Medicare and Medicaid systems as Conditions

19 of Payment of any subsequently presented claims.  Cook further alleges that the failure of the

20 Providence defendants to comply with these laws, regulations and program requirements, renders

21 the certifications to comply with the Medicare and Medicaid laws, regulations and program

22 requirements made by each of the Providence defendants, "false records or statements" contrary to

23 § 3729(a)(1)(B) which were "knowingly" made  with the necessary scienter as defined in 31 U.S.C.

24 § 3729(b)(1)(A).[6]

25

26 [6] 31 U.S.C. § 3729(b)(1)(A) reads, in pertinent part, as follows:
**"(b) Definitions.—** For purposes of this section—

27 **(1)** the terms "knowing" and "knowingly"—
**(A)** mean that a person, with respect to information—

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

1  　The present definition of "knowing or knowingly" set forth in of 31 U.S.C. § 3729(b)(1)(A)

2  was enacted as a result of the Fraud Enforcement and Recovery Act of 2009 (FERA) and it

3  substantially extended the number of possible instances to which FCA liability may attach. A

4  specific intent to defraud is not required.  Other key changes in the FCA made by FERA are

5  redefined (or defined) definitions of "claim", "obligation" and "material" which were intended to

6  expand FCA liability beyond previous limits.  John T. Boese, Civil False Claims And Qui Tam

7  Actions, Fourth Edition, § 1.09 (A), Page I-74.

8  　The definition of "claim", as defined by the FERA amendments to the FCA, was intended

9  to eliminate the limitations imposed upon the FCA by the holding in *Allison Engine v. U.S. ex. rel.*

10  *Sanders and Thacker*, 128 S.Ct. 2123 (2008). *Boese, supra. Allison Engine's, Id.,* holding that

11  liability under those sections is dependent upon a false record or statement being made "to get"

12  payment made directly by the Government has been statutorily reversed by the FERA amendments

13  to the FCA, specifically the amended definition of claim.  False claims no longer have to be

14  submitted directly to the Government so long as the "....money or property is to be spent or used on

15  the Government's behalf or to advance a Government program or interest," if the United States

16  Government ". . . provides or has provided any portion of the money requested or demanded; or will

17  reimburse a contractor, grantee, or other recipient or other recipient for any portion of the money or

18  property which is requested or demanded."  These changes to the FCA are pertinent to the present

19  case as Medicaid funds are administered by the states and claims for reimbursement are submitted

20  to the states.  Medicare funds are administered by third party intermediaries and, thus, this change

21  pertains to Medicare, as well.

22  　FERA also incorporates a "materiality" requirement in place of the "to get" language used

23  by the Supreme Court in *Allison Engine supra.*, to limit liability under the previous version of the

24  FCA. *Boese, supra.*, 2014 Supplement, Page I-77.

25

**(i)** has actual knowledge of the information;

26  **(ii)** acts in deliberate ignorance of the truth or falsity of the information; or
**(iii)** acts in reckless disregard of the truth or falsity of the information; and

27  **(B)** require no proof of specific intent to defraud; . . ."

PLAINTIFF'S RESPONSE TO DEF'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(Case No. C13-01312-RAJ) - 10 of 24

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

Under FERA, "material" is defined as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of property." The term "material" is only included in two to he post FERA liability sections of the FCA, §'s 3729(a)(1)(B) and 3729(a)(1)(G). It is only a necessary element as a result for actions based upon these two sections.

The scienter required to be established under the FCA after the FERA amendments is as set forth in 31 U.S.C. § 3729(b)(1)(A) (see Footnote 1) and requires no specific intent to defraud. In the context of this case all Cook must allege and prove to establish scienter is "deliberate indifference" or "reckless disregard" of the truth or falsity of the required certifications submitted in the Medicare and Medicaid enrollment applications. These amendments have expanded the application of the FCA subsequent to the Ninth Circuit decision in *Hendow, supra*. The absence of the term "material" in subsection (a)(1)(A) compels the conclusion that determining whether a false statement is material is relevant only to the evidence necessary to link a false record to a false claim under § 3729(a)(1)(B) or § 3729(a)(1)(G). *Boese, supra.,* § 1.09 (A).

Section 3729(a)(1) (G) is alleged in the SAC to have been violated by the defendants. It reads as follows:

any person who;

knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decrease and obligation to pay or transmit money or property to the Government, is liable to the Government....

The interpretation of that section requires a reference to the statutory definition of "obligation" as set forth in § 3729(b)(3) which " means an established duty, whether or not fixed, arising from and express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, form statute or regulation or from the retention of any overpayment".

The defendants have violated § 3729(a)(1)(G) by not returning the money they have wrongfully received from the Government when they have paid a claim that is false because of the providers failure to follow the applicable laws, regulations or program requirements that are a

PLAINTIFF'S RESPONSE TO DEF'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(Case No. C13-01312-RAJ) - 11 of 24

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

condition of payment of the claim.  § 3729(a)(1)(G) has been alleged in the SAC to have been violated by the defendants failure to refund funds to Medicare and Medicaid where other funds have been collected from third parties as a "double payment" on the same account and funds have not been refunded to Medicare or Medicaid as required by the applicable laws, regulations, and program requirements.

The certifications which Providence made to the United States and the various state governments are required for any provider to be enrolled in the Medicare and Medicaid systems. These certifications of compliance with the laws, regulation and program requirements of the Medicare and Medicaid systems are a necessary part or any provider's enrollment process.  They are specifically required as a precondition of enrollment in order to receive Medicare or Medicaid funds.

It cannot  reasonably be argued that the allegedly false certifications were not "material" or did not "influence the Government to pay out money or forfeit moneys due" because the certification language is a necessary part of the enrollment application and a provider cannot be paid by Medicare or Medicaid without enrollment.

Any subsequent claim made by a Provider in knowing violation of the Certifications a Provider must make in  the Provider Enrollment Applications is rendered  a false claim as a result of the providers noncompliance with the specified laws, regulations and program requirements . Where payment is conditioned upon a Certification of compliance with specified laws, regulations or program requirements, any knowing violation of the applicable laws, regulations and program requirements renders any claim that does not conform to the required laws, regulations or program requirements false.  *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 269 (5th Cir. 2010).

A claim which is in violation of specified regulatory "Conditions of Payment" is also "legally false" pursuant to § 3729(a)(1)(A), independent of any violation of § 3729(a)(1)(B).  *Boese, supra.,* § 1.09 (B).

Thus, each of the four required elements necessary to a successful FCA action have been alleged in the SAC by Cook.

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

B.    **PROVIDENCE HAS MADE THOUSANDS OF FALSE CLAIMS**

Cook has alleged in her SAC the submission of thousands of false claims by Providence. She has alleged that hundreds, if not thousands, of accounts per week are handled by HSAM collectors on behalf of Providence upon which false claims have been made by Providence to the Government.

One of the commonest frauds perpetrated upon the Government by Providence is the collection of Medicare and Medicaid funds from those programs, a subsequent failure to credit these funds to the right account, and a resulting referral of the uncredited account to HSAM for collection directly from the beneficiaries at private pay rates. This results in two types of fraud; failure to post Government payments to the proper accounts and the failure to adjust any required beneficiary payments properly to limit them to the amount a beneficiary can be legally charged. Thus, beneficiaries are being billed for charges that have already been paid by Medicare and Medicaid, but not credited to the beneficiaries account, as well as being billed at private rates in excess of Medicare and Medicaid permitted rates.

Another type of fraud alleged by the SAC is the failure to properly adjust the beneficiary responsibility portion of any bill presented to the beneficiary. Permitted beneficiary charges must be, per Medicare and Medicaid program rules, strictly limited and adjusted properly. The SAC alleges charges in excess of permitted, properly adjusted (almost always reduced) charges, are sought and received from beneficiaries.

Providence has acted with the requisite scienter of "actual knowledge", "deliberate ignorance", or "reckless indifference of the truth or falsity" of the claims submitted and of the certifications of compliance they have made with the Government as a condition of payment of their subsequently presented claims for payment. Cook has alleged that she and other collectors at HSAM had repeatedly complained to management of the improper manner in which Providence and HSAM handled the Medicare and Medicaid eligible accounts that were referred by Providence to HSAM. HSAM is an integral part of the Providence Healthcare System and only handles Providence accounts. HSAM employees regularly represent themselves as employees by Providence when

PLAINTIFF'S RESPONSE TO DEF'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(Case No. C13-01312-RAJ) - 13 of 24

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

1    dealing with Medicare intermediaries and Medicaid payers (the States).  HSAM employees are paid

2    by Providence.  HSAM and Providence clearly acted "knowingly" and conspired to defraud the

3    Government because both HSAM and Providence knew or should have known of the massive fraud

4    they have perpetrated upon the Government and Medicare and Medicaid beneficiaries.

5    **C.    PROVIDENCE VIOLATES THE LAWS, REGULATIONS AND PROGRAM**

6    **REQUIREMENTS OF MEDICARE.**

7            42 C.F.R. § 489.20 outlines the basic commitments that a Provider must agree to in order to

8    participate in the Medicare system.  The Provider is required to: (1) limit its charges to beneficiaries

9    in accordance with the program requirements; (2) comply with program requirements for the return

10   of any amounts wrongfully collected from a beneficiary or other person; (3)  maintain a system that,

11   during the admission process, identifies any primary payers other than Medicare so that incorrect

12   billing and Medicare overpayments can be prevented; (4) to reimburse Medicare for any overpaid

13   amount within 60 days; and (5) to accept a reduced payment if the provider received, from a payer

14   who is primary to Medicare, a payment that us reduced because the provider failed to file a proper

15   claim.

16           Cook has alleged in her SAC that Providence has violated each one of these provisions of

17   42 C.F.R. § 489.20.

18           42 C.F.R. § 489.21 limits the charges that a provider can charge Medicare beneficiaries.  A

19   beneficiary cannot be charged directly for any service to which the beneficiary is entitled to payment

20   by Medicare or for a service that would have been paid by Medicare but for a lack of the proper

21   certification by a physician,  or the lack of the necessary information to support the claim, or the lack

22   of a properly filed (by the Provider) written request for payment to be made directly to provider. This

23   regulation puts the responsibility and potential monetary loss for filing a proper Medicare claim upon

24   the provider.  Relator has alleged in her SAC that Providence has improperly shifted their monetary

25   loss to Medicare and Medicaid beneficiaries and  has repeatedly violated this regulation and instead

26   has sought payment directly at private pay rates often in addition to Medicare and Medicaid

27

PLAINTIFF'S RESPONSE TO DEF'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(Case No. C13-01312-RAJ) - 14 of 24

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

1    payments from the beneficiaries as a result violating 42 C.F.R. § 489.21.[7]

2    **D.    PROVIDENCE VIOLATES THE LAWS, REGULATIONS AND PROGRAM**

3    **REQUIREMENTS OF MEDICAID.**

4    Pursuant to 42 C.F.R. § 447.15, a state must limit participation in the Medicaid program to

5    providers who accept, as payment in full, the amounts paid by the agency, plus any deductible,

6    coinsurance, or copayment required by the plan to be paid by the individual.  This regulation has

7    been alleged by Cook in the SAC to have been violated by the Providence defendants as described

8    in the complaint.  Each state named in the SAC has adopted rules to comply with 42 C.F.R. §

9    447.15.

10

11   [7] 42 C.F.R. § 489.21  - SPECIFIC LIMITATIONS ON CHARGES - reads as follows:
     Except as specified in subpart C of this part, the provider agrees not to charge a beneficiary for any of the following:
12   (a) Services for which the beneficiary is entitled to have payment made under Medicare.
     (b) Services for which the beneficiary would be entitled to have payment made if the provider—
13       (1) Had in its files the required certification and recertification by a physician relating to the services furnished to
         the beneficiary;
14       (2) Had furnished the information required by the intermediary in order to determine the amount due the provider
         on behalf of the individual for the period with respect to which payment is to be made or any prior period;
15       (3) Had complied with the provisions requiring timely utilization review of long stay cases so that a limitation on
         days of service has not been imposed under section 1866(d) of the Act (see subpart K of part 405 and part 482 of
         this chapter for utilization review requirements); and
16       (4) Had obtained, from the beneficiary or a person acting on his or her behalf, a written request for payment to be
         made to the provider, and had properly filed that request. (If the beneficiary or person on his or her behalf refuses
17       to execute a written request, the provider may charge the beneficiary for all services furnished to him or her.)
     (c) Inpatient hospital services furnished to a beneficiary who exhausted his or her Part A benefits, if CMS reimburses
18   the provider for those services.
     (d) Custodial care and services not reasonable and necessary for the diagnosis or treatment of illness or injury, if—
19       (1) The beneficiary was without fault in incurring the expenses; and
         (2) The determination that payment was incorrect was not made until after the third year following the year in which
20       the payment notice was sent to the beneficiary.
     (e) Inpatient hospital services for which a beneficiary would be entitled to have payment made under Part A of Medicare
21   but for a denial or reduction in payments under regulations at § 412.48 of this chapter or under section 1886(f) of the
     Act.
22   (f) Items and services furnished to a hospital inpatient (other than physicians' services as described in § 415.102(a) of
     this chapter or the services of an anesthetist as described in § 405.553(b)(4) of this chapter) for which Medicare payment
23   would be made if furnished by the hospital or by other providers or suppliers under arrangements made with them by
     the hospital. For this purpose, a charge by another provider or supplier for such an item or service is treated as a charge
24   by the hospital for the item or service, and is also prohibited.
     (g) [Reserved]
25   (h) Items and services (other than those described in §§ 489.20(s)(1) through (15)) required to be furnished under §
     489.20(s) to a resident of an SNF (defined in § 411.15(p) of this chapter), for which Medicare payment would be made
26   if furnished by the SNF or by other providers or suppliers under arrangements made with them by the SNF. For this
     purpose, a charge by another provider or supplier for such an item or service is treated as a charge by the SNF for the
27   item or service, and is also prohibited.

PLAINTIFF'S RESPONSE TO DEF'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(Case No. C13-01312-RAJ) - 15 of 24

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

The most common and egregious act of Providence is to collect funds from Medicaid for Medicaid eligible patients, and then refer these same accounts to HSAM for collection actions directed at the patient for charges and rates not permitted by Medicaid, which is contrary to applicable laws, regulations and program requirements.  This results in illegal double or excess payments.

Each state has slightly different language in their Medicaid Provider Enrollment forms.  Washington's Core Provider Agreement is set forth as Exhibit "C" to the SAC.  Language from Ex. "C" is highlighted in Paragraph XIX of the SAC.  A Medicaid Provider in Washington must sign the Core Provider Agreement (henceforth "CPA"). WAC 182-502-0005 and WAC 182-502-0010(f).[8]

Washington requires in the CPA a provider to accept the payment from the agency as payment in full in accordance with 42 C.F.R. § 447.15 and WAC 182-502-0160.[9]

WAC 182-502-0100 sets forth the general conditions of payment for the Medicaid system in Washington and it requires that the provider to bill within the proper time periods and according to department rules and billing instructions.  WAC 182-502-0150(3) requires enrolled Medicaid providers to accept as payment in full the amount paid by the Washington Health Care Agency for Washington  Medicaid eligible accounts, except in certain very limited circumstances.[10]   See also

---

[8]  WAC 182-502-0005(1) reads as follows:
Core provider agreement (CPA).
  (1) The agency only pays claims submitted by or on behalf of a health care professional, health care entity, supplier or contractor of service that has an approved core provider agreement (CPA) with the agency, is a performing provider on an approved CPA with the agency, or has an approved agreement with the agency as a nonbilling provider in accordance with WAC 182-502-0006.
  WAC 182-502-0010(f) and (g) read as follows:
When the medicaid agency enrolls.
  f) Sign, without modification, a core provider agreement (CPA) (HCA 09-015), disclosure of ownership form, and debarment form (HCA 09-016) or a contract with the agency;
  (g) Agree to accept the payment from the agency as payment in full (in accordance with 42 C.F.R. § 447.15 acceptance of state payment as payment in full and WAC 182-502-0160 billing a client);
[9] WAC 182-502-0100(1)(a) reads as follows:
  (1) The department reimburses for medical services furnished to an eligible client when all of the following apply:
  (a) The service is within the scope of care of the client's medical assistance program;
[10] WAC 182-502-0150(3) reads as follows:
Time limits for providers to bill the department.
  (3) Providers must submit the initial claim to the department and have a transaction control number (TCN) assigned by the department within three hundred sixty-five calendar days from any of the following:
  (a) The date the provider furnishes the service to the eligible client;

---

42 C.F.R. § 447.15.   WAC 182-502-0160 sets forth the requirements for billing an eligible Washington Medicaid beneficiary in addition to the Medicaid program administered payment as set forth, in pertinent part, below:

> (4) A provider must not bill a client, or anyone on the client's behalf, for any services until the provider has completed all requirements of this section, including the <u>conditions of payment described in the agency's rules, the agency's fee-for-service billing instructions, and the requirements for billing the agency-contracted MCO in which the client is enrolled, and until the provider has then fully informed the client of his or her covered options</u>. A provider must not bill a client for:
> (a) Any services for which the provider failed to satisfy the conditions of payment described in the agency's rules, the agency's fee-for-service billing instructions, and the requirements for billing the agency-contracted MCO in which the client is enrolled.
> (b) A covered service even if the provider has not received payment from the agency or the client's MCO.
> (c) A covered service when the agency or its designee denies an authorization request for the service because the required information was not received from the provider or the prescriber under WAC 182-501-0165(7)(c)(I).
> (emphasis added)

If the provider fails to follow the requirements for filing a Medicaid claim when a request for Medicaid payment is made to Washington's Health Care Authority for payment and the payment is denied as a result, the client (beneficiary) cannot be billed.   Billing beneficiaries under such circumstances is absolutely forbidden.[11]

Providence, besides billing Medicaid beneficiaries for illegal charges, also illegally retains payments made on these beneficiaries behalf by third parties such as casualty insurers.   These third party payments, when made, require a prompt (30 days ) refund of any Medicaid or Medicare payments to which the third party payments represent double or excess payment.

For example, for payments received from third parties such as auto insurance carriers, Washington's rules pertaining to Medicaid require a prompt repayment of the funds received from Medicaid.   "If the provider receives payment from an insurance company for services that have been

---

(b) The date a final fair hearing decision is entered that impacts the particular claim;
(c) The date a court orders the department to cover the service; or
(d) The date the department certifies a client eligible under delayed certification criteria.
[11] WAC 182 - 502 - 153 (13) reads as follows:
(13) If a provider fails to bill a claim according to the requirements of this section and the department denies payment of the claim, the provider or any provider's agent cannot bill the client or the client's estate. The client is not responsible for the payment.

PLAINTIFF'S RESPONSE TO DEF'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(Case No. C13-01312-RAJ) - 17 of 24

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

1   paid by the Agency, the provider must immediately refund to the Agency either the Agency's

2   payment or the insurance payment, whichever is less.  If the refund is not made within 30 days, the

3   Agency recovers the lesser payment."  Provider One Billing and Resource Guide, Page 50.

4          A Washington Medicaid provider, as a condition of payment, must bill according to the

5   department's rules and billing instructions.  The conditions of payment of a Medicaid claim are set

6   forth in WAC 182-502-0100.  WAC 182-502-0100(1)(e) requires Medicaid billing to be done

7   according to department rules.[12]  WAC 182-502-0010(f) requires a provider to follow all third party

8   payment procedures.[13]

9          WAC 182-502-0160 sets forth the very limited ways in which Medicaid beneficiaries can be

10  billed.[14]  The SAC sets out acts by Providence which contravene WAC 182-502-0160.

11         Oregon's Medicaid Provider Agreement requires accurate billing and compliance with

12  applicable laws.  Oregon has numerous regulations violated by the facts alleged in the SAC.

13         OAC 410-125-0221 reads as follows:

14  **410-125-0221**

15  **Payment in Full**

16  The payment made by Medicaid towards any inpatient or outpatient services,
    including cost outlier, disproportionate share, and capital payments, constitutes
17  payment in full for the service.

18         OAC 410-125-0640(10) specifically forbids billing as described in the SAC as follows:

19  (10) The hospital may not bill the client under the following circumstances:
20  (a) For services which are covered by the Division;
    (b) For services for which the Division has made payment;
21  (c) For services billed to the Division for which no payment is made because third
    party reimbursement exceeds the Division maximum allowed amount;

22  _____

23  [12] WAC 182-502-0100(e) reads as follows:
    General conditions of payment.
    (1) The department reimburses for medical services furnished to an eligible client when all of the following apply:
24  (e) The provider bills according to department rules and billing instructions;
    [13] WAC 182-502-0100(f) reads as follows:
25  General conditions of payment.
    (1) The department reimburses for medical services furnished to an eligible client when all of the following apply:
26  (f) The provider follows third-party payment procedures.
    [14] See WAC 182-502-0160 in the attached Appendix.
27

PLAINTIFF'S RESPONSE TO DEF'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(Case No. C13-01312-RAJ) - 18 of 24

(d) For any deductible, coinsurance or co-pay amount;
(e) For services for which the Division has denied payment to the hospital as a result of one of the following:
(A) The hospital failed to supply the correct information to the Division to allow processing of the claim in a timely manner as described in these rules and the General Rules;

OAC 410-125-0640(5)(a) specifically forbids billing and retaining funds from a third party and Medicaid for an illness or injury to which liability insurance applies.   Cook has alleged Providence violates this regulation.

OAC 410-125-0640(5)(a) reads as follows:

(5) Liability:
(a) Liability refers to insurance that provides payment based on legal liability for injuries or illness or damages to property. It includes, but is not limited to, automobile liability insurance, uninsured and underinsured motorist insurance, homeowners' liability insurance, malpractice insurance, product liability insurance and general casualty insurance. It also includes payments under state "wrongful death" statutes that provide payment for medical damages;
(b) The provider may bill the insurer for liability prior to billing the Division. The provider may not bill both the Division and the insurer;
(c) The provider may bill the Division after receiving a payment denial from the insurer; however, the Division billing must be within 12 months of date of service. Payment accepted from the Division is payment in full;
(d) The provider may bill the Division without billing the liability insurer. However, payment accepted from the Division is payment in full. The payment made by the Division may not later be returned in order to pursue payment from the liability insurer. When the provider bills the Division, the provider agrees not to place any lien against the client's liability settlement;
(emphasis added)

Montana, except in certain limited and defined circumstances, does not allow a Medicaid beneficiary to be billed.  ARW 37.85.40(11) reads as follows:

11) Providers are required to accept, as payment in full, the amount paid by the Montana Medicaid program for a service or item provided to an eligible Medicaid recipient in accordance with the rules of the department. Providers shall not seek any payment in addition to or in lieu of the amount paid by the Montana Medicaid program from a recipient or his representative, except as provided in these rules. A provider may bill a recipient for the copayments specified in ARM 37.83.826 and 37.85.204 and may bill certain recipients for amounts above the Medicare deductibles and coinsurance as allowed in ARM 37.83.825.

Alaska, except in certain limited and defined circumstances, does not allow a Medicaid beneficiary to be billed.  7 ACC 145.005 (Conditions for payment) reads as follows:

(b) The payment rate established by the department for a given service, less the

PLAINTIFF'S RESPONSE TO DEF'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(Case No. C13-01312-RAJ) - 19 of 24

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

amount of cost-sharing required under 7 AAC 105.610, constitutes full payment from the department for that service. Except as provided in 7 AAC 110.145, a provider may not charge a recipient or recipient's, relative, friend, or representative, any amount to supplement payment by the department for services to which the recipient is entitled under 7 AAC 105 - 7 AAC 160.

(g) By providing a service to a Medicaid recipient and billing the department for that service, a provider agrees to comply with applicable department regulations.

Idaho, except in certain limited and defined circumstances, does not allow a Medicaid beneficiary to be billed.  IDAPA 16.03.09(210)(4) reads as follows:

**04. Payment in Full**. If a provider accepts Medicaid payment for a covered service, the Medicaid payment must be accepted as full payment for that service, and the participant cannot be billed for the difference between the billed amount and the Medicaid allowed amount.

*New York v. Amgen, Inc.,* 652 F.3d 103 (1st Cir. 2011), provides strong support for the viability of Cook's SAC.  In that case, seven states sued *Amgen* under a prior version of the FCA alleging violation of the various State's Medicaid provider agreements through *Amgen's* violating the Anti-Kickback Statute (AK5), 42 U.S.C. § 1320a-7b.

In *Amgen, supra.,* the court stated:

To survive this 12(b)(6) motion, Westmoreland and the state intervenors must make two showings with adequate specificity. First, they must show that the claims at issue in this litigation misrepresented compliance with a material precondition of Medicaid payment such that they were false or fraudulent. Second, they must show that the defendants knowingly caused the submission of the false or fraudulent claims, the submission of false records or statements to get the false or fraudulent claims paid, or otherwise conspired to defraud the state by getting the false or fraudulent claims paid.

*Amgen, supra.,* 652 F.3d 103, 110.

The court found that both of the two requirements had been met by the relators.

Cook, in her SAC, had made these two showings with enough specificity to survive a 12(b)(6) motion.

E.     **DEFENDANTS ARGUMENTS ARE WITHOUT MERIT.**

The defendants arguments are entirely premised upon case law interpreting the now amended FCA.  Defendants do not even address the liberalizing effects of the amendments.  The plain reading of the amended FCA, the Provider Enrollment certification, and the violated regulations themselves,

PLAINTIFF'S RESPONSE TO DEF'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(Case No. C13-01312-RAJ) - 20 of 24

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

1    shows that Providence has violated the FCA by not meeting the written conditions of payment.

2    The claims made by Providence are both "factually" false and "legally" false. They are false

3    claims because a Medicare and Medicaid provider cannot "double" bill for the same service.

4    Moreover, a provider cannot exceed the limited amounts permitted to be billed beneficiaries; doing

5    so makes any claim to the Government that also results in double or excess payment by the

6    beneficiary, a false claim. Thus, independent of any false certification, pursuant to § 3729(a)(1)(B)

7    and § 3729(a)(1)(G), there is also a violative of § 3729(a)(1)(A) because the claims themselves are

8    false or fraudulent.

9    The false record or statement material to a false or fraudulent claim that Cook claims

10   Providence made, used or caused to be made or used is their own false certification in the various

11   Provider Enrollment Agreements.

12   The "material" element is only required for action brought under § 3729(a)(1)(B) and §

13   3729(a)(1)(G). John T. Boese, Civil False Claims And Qui Tam Actions, Fourth Edition, § 1.09 (A),

14   Page I-74.

15   The defendants do not ever address Cook's § 3729(a)(1)(G) claim. Providers are required

16   to refund amounts over payed by Medicare and Medicaid; often in as little as 30 or 60 days. Cook

17   alleges the required refunds are never made. Cook alleges a knowing concealment or a knowing

18   action taken to avoid an obligation to pay or transmit money to the Government. Specifically, she

19   is alleging Providence is not accounting for and refunding payments from third parties that would

20   otherwise decrease the amount Medicare is responsible for if the third party payments were properly

21   accounted for.

22   The cases cited and primarily relied upon by defendants do not address the amended FCA.

23   *Conner v. Salina Regional Health Center, Inc.,* 593 F.3d 1211 (10th Cir. 2008) differs because the

24   relator's allegations concerned the required Medicare annual cost report and its alleged falsity. The

25   certification at issue are quite different from those at issue in the present case. *U.S. ex rel. Hopper*

26   *v. Anton*, 91 F.3d 1261 (9th Cir. 1996), no particular similarity to the facts alleged by Cook. Unlike

27

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

1    in *Hopper, Id.*, the certification at issue in the SAC reference the violated "Conditions of Payment"

2    laws. The 1st Circuit has recognized a cause of action based upon false certification of compliance

3    with laws and regulations. *Amgen, supra.*

4         *Gonzales v. Planned Parenthood of L.A.*, 2012 U.S. Dist. Lex.3 88495 also interprets the

5    FCA as it existed prior to the 2009 and 2010 amendments. It is factually distinguishable from the

6    present case. In *Gonzales*, the agreement at issue did not contain the specific "Condition of

7    Payment" language at issue in this case. The language at issue in this case is very specific in its

8    requirements.

9         *U.S. ex rel. Williams v. Renal Care Corp., Inc.,* 646 F.3d 518, 532 (6th Cir. 2012) concerned

10   a violation of "Conditions of Participation." The present case covers violation of "Condition of

11   Payment" and alleged specific certifications of compliance were violated.

12        *U.S. ex rel. Rustholder v. Omnicare, Inc.,* 2014 U.S. App., LEXIS 3296 (4th Circ. Feb. 21,

13   2014) is factually distinguishable as it concerned violations of F.D.A. regulations, not Medicare or

14   Medicaid conditions of payment regulations. There was no "false certification" at issue in

15   *Rustholder, supra.*

16        Cook has satisfied the pleading requirements of Rule 9(b). The amount of particularity of

17   or specificity required for pleading fraud and mistake differs from case to case, but generally depends

18   upon the amount of access the pleader has to specific facts, considering the complexity of the claim,

19   the relationship of the parties, the context in which the alleged fraud or mistake occurs and the

20   amount of specificity necessary for the adverse party to prepare a responsive pleading. The

21   particularity requirement of Rule 9 is not, however, intended to abrogate the Rule 8 "_____"

22   pleading standard. Federal Civil Rules Handbook, 2014 Thomson Reuters/West Publishing.

23        The SAC provides the requisite particularity of Rule 9(b). The cause of action alleged in the

24   SAC provides ample notice to the defendants of the factual allegations constituting fraud, as defined

25   by the FCA.

26        Rule 9(b) is no longer implicated by the FCA because the FCA requires "no specific intent"

27

PLAINTIFF'S RESPONSE TO DEF'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(Case No. C13-01312-RAJ) - 22 of 24

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

1    to defraud.  It seems that, after the 2009 amendments, Rule 9(b) no longer applies to an FCA claim.

2     Some court's have described the "reckless indifference" standard as merely a heightened type of

3    negligence.

4    **F.     COOK REQUESTS DENIAL OF DEFENDANTS' MOTION: IN THE**

5    **ALTERNATIVE, COOK REQUESTS LEAVE TO AMEND THE SAC.**

6           The court will generally permit an opportunity to amend a complaint after a ruling of

7    dismissal by the court pursuant to a 12(b)(6) motion.  Even when the court doubts the pleading

8    defects can be overcome or when the pleader neglects to request leave to do so, plaintiffs are

9    typically permitted to amend their dismissed pleading at least once, unless the exercise would be

10   plainly futile.  Federal Practice and Procedure - Civil - Rule 12 at page 276-277, 2013 Quick

11   Reference Guide, West Publishing.

12          Cook requests leave to amend if the court is inclined to grant the defendant's 12(b)(6)

13   motion.  Cook further requests directions from the court highlighting those areas the court deems the

14   SAC deficient.

15                              **V.  CONCLUSION**

16          The FCA, the violated laws and regulations at issue, and the certification statements are all

17   consistent and contain the same language and terms.  It is clear that the certification at issue were

18   drafted in a way to complicate the FCA as a remedy in situations as alleged in the SAC.

19          Cook requests denial of the defendants' 12(b)(6) and 9(b) motions.  In the alternative, Cook

20   requests leave to amend her SAC.

21          **DATED** this 21st day of April, 2014.

22                                      **LAW OFFICE OF DOUGLAS R. CLOUD**

23

24                                      s/ Douglas R. Cloud
                                        **DOUGLAS R. CLOUD, WSBA #13456**
25                                      Attorney for Plaintiff

26

27

PLAINTIFF'S RESPONSE TO DEF'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(Case No. C13-01312-RAJ) - 23 of 24

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

1

## CERTIFICATE OF SERVICE

2      The undersigned declares as follows:

3      1.      I am over the age os 21 and not a party to this action.

4      2.      I am an employee of Douglas R. Cloud, Attorney at Law, Attorney for Plaintiff.

5      3.      On this day, I certify that I forwarded this document to be served on counsel of record

6      for the Providence defendants in the following manner:

7

8

| Counsel for the Providence Defendants: | |
|---|---|
| Jeffrey B. Coopersmith, WSBA 30954<br>John A. Goldmark, WSBA #40980<br>DAVIS WRIGHT TREMAINE LLP<br>1201 Third Ave, Ste 2200<br>Seattle, WA 98101-3045<br>Phone: 206-622-3150<br>Fax: 206-757-7700<br>Emails: jeffcoopersmith@dwt.com<br>        johngoldmark@dwt.com | _____ Messenger<br>_____ US Mail<br>_____ Facsimile<br>___X___ ECF<br>_____ Email<br>_____ E-Service<br>_____ E-Filed |

14      I certify under penalty of perjury under the laws of the State of Washington that the foregoing

15      is true and correct.

16      Dated at Tacoma, Washington this 21st day of April, 2014.

17

18      s/ Carrie L. Marsh
        **CARRIE L. MARSH**

19

20

21

22

23

24

25

26

27

PLAINTIFF'S RESPONSE TO DEF'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(Case No. C13-01312-RAJ) - 24 of 24

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376